The **MUTUAL BENEFIT LIFE INSURANCE COMPANY, Plaintiff,**

and

**The Equitable Life Assurance Society of the United States, John Hancock Mutual Life Insurance Company, Aetna Life Insurance Company, Bankers Life Company, Connecticut General Life Insurance Company, Continental Assurance Company, Indianapolis Life Insurance Company, Maccabees Mutual Life Insurance Company, and the United States Life Insurance Company in the City of New York, Intervenor Plaintiffs,**

v.

**ATLAS FINANCIAL CORPORATION, Defendant.**

**Civ. A. No. 70-1770.**

United States District Court, E. D. Pennsylvania.

Nov. 25, 1970.

Leonard Barrack, Philadelphia, Pa., for plaintiff.

Reeder R. Fox, Duane, Morris & Heckscher, Philadelphia, Pa., for intervenor plaintiffs.

Patrick W. Kittredge, Cohen, Shapiro, Berger, Polisher & Cohen, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER

HANNUM, District Judge.

Presently before the court is the Motion of plaintiff and intervenor plaintiffs, pursuant to Rule 65, Fed.R.Civ.P., for a Preliminary Injunction seeking to restrain defendant from making any payments to its former parent corporation, Scientific Resources Corporation, under the terms of a tax sharing agreement dated September 15, 1965, as amended December 31, 1966. Accordingly, after hearing and due consideration of this matter, the court makes the following:

### FINDINGS OF FACT

1. Plaintiff and intervenor plaintiffs are among a group of institutional lenders ("noteholders") who have made certain loans to defendant. Defendant is a finance company and is primarily engaged in the financing of consumer loans, and in particular, home improvement loans.

2. Noteholders, including plaintiff and intervenor plaintiffs, were owed by Atlas, as of September 30, 1970, the principal sum of $26,550,000.

3. By virtue of various acts of default on the part of defendant under the Note Agreements with noteholder, the entire principal balance of $26,550,000 was accelerated and became immediately due and payable during the period June–July, 1970.

4. Defendant was unable to pay the sum of $26,550,000 to noteholders, and accordingly plaintiff and intervenor plaintiffs, on behalf of all noteholders, entered into an interim Stipulation with defendant dated September 30, 1970, which Stipulation resolved, on an interim basis, a number of the matters in dispute between the parties hereto.

5. Just prior to the time the parties entered into the Stipulation dated September 30, 1970, defendant advised plaintiff and intervenor plaintiffs that defendant proposed to make a payment of approximately $385,000 to its former parent corporation, Scientific Resources Corporation, pursuant to a tax sharing agreement.

6. Plaintiff and intervenor plaintiffs requested defendant to defer making such a payment until they had an opportunity

to review the propriety of such a payment under the tax sharing agreement.

7. Defendant was unwilling to agree to defer said payment, and defendant advised plaintiff and intervenor plaintiffs that it intended to make such payment on September 30, 1970.

8. Plaintiff and intervenor plaintiffs thereupon filed a motion for temporary restraining order which was granted by this court, and a temporary restraining order was entered by Judge Joseph Lord, III on September 30, 1970 restraining defendant, until further order of the court, from issuing any checks or making any payments to Scientific Resources Corporation, or any affiliated corporation, under the terms of the tax sharing agreement.

9. By stipulation of the parties hereto, said temporary restraining order was extended to November 10, 1970, on which date plaintiff and intervenor plaintiffs filed a motion for preliminary injunction.

10. Said motion for preliminary injunction requested the court to enjoin the defendant, its agents, servants and employees, pending the final hearing and determination of this action, from issuing any checks and making any payments to Scientific Resources Corporation or any affiliated corporation under the terms of the tax sharing agreement.

11. A hearing was held on the motion for preliminary injunction on November 16–17, 1970.

12. By a Stipulation dated November 16, 1970, counsel for all the parties hereto agreed to narrow the issues before the court on the hearing, and further agreed that if the court determined, after the hearing, that:

(a) The rights of plaintiff and intervenor plaintiffs would be prejudiced, within the meaning of paragraph 5(g) of the Stipulation dated September 30, 1970, if such payment were made by defendant, and that plaintiff and intervenor plaintiffs do not have to prove irreparable harm, or

(b) The rights of plaintiff and intervenor plaintiffs would be irreparably harmed if such payment were made by defendant, then

under said Stipulation the parties hereto agreed that if the court found in favor of plaintiff and intervenor plaintiffs on either or both of (a) and (b) above, that plaintiff and intervenor plaintiffs were entitled to a preliminary injunction.

13. During the recent years, defendant has incurred substantial operating losses. The audited financial statements of defendant for the fiscal years ended September 30 show the following net profits (or losses):

| 1966 | Net Income | $1,541,069. |
| 1967 | Net Income | 532,970. |
| 1968 | Net Loss | (2,379,262.) |
| 1969 | Net Loss | (3,668,691.) |

No figures are as yet available for the fiscal year ended September 30, 1970.

14. In recent years there has been a substantial decline in the size of the notes receivable portfolio of defendant, coupled with a sharp increase in the size of the allowance or reserve for losses resulting from delinquent accounts. The recent net losses incurred by defendant were substantially attributable to this establishment of additional reserves. The audited financial statements of defendant for the fiscal years ended September 30 show the following:

| | Installment Notes Receivable | Allowance for Losses |
| --- | --- | --- |
| 1966 | $93,485,203. | $1,237,550. |
| 1967 | 90,492,199. | 1,628,673. |
| 1968 | 68,621,052. | 4,631,026. |
| 1969 | 50,413,116. | 6,068,373. |

No audited figures are available for the fiscal year ended September 30, 1970, but an unaudited statement as of July 31, 1970 showed a portfolio of installment notes receivable of $36,540,359.

15. The independent certified public accounting firm of Lybrand, Ross Bros. & Montgomery, at the request of noteholders, performed an independent analysis of the notes receivable portfolio of defendant as of July 31, 1970, which valuation was made on an orderly liquidation basis.

16. Defendant is, for all practical purposes, presently in the process of an orderly liquidation, and the conclusions contained in the report of Lybrand, Ross Bros. & Montgomery are fully supported by the evidence presented by plaintiff and intervenor plaintiffs.

17. Defendant is unable to pay the $26,550,000 due and owing to all noteholders, and on the basis of the projected income and expenses of defendant, it would take approximately three years to repay said indebtedness.

18. During the course of such a three-year period, defendant would incur operating expenses and would also be obliged to pay the interest due and payable on the unpaid principal balance of the indebtedness to the noteholders.

19. On the basis of the valuation of the notes receivable portfolio by Lybrand, Ross Bros. & Montgomery, defendant does not have sufficient assets to repay in full the principal and interest due and owing to noteholders, including plaintiff and intervenor plaintiffs. If defendant were permitted to make a payment of $318,000 to Scientific Resources Corporation, such a payment would cause a further reduction in the available assets of defendant, which assets are already less than the amount necessary to repay the indebtedness owed to noteholders.

20. No substantial prejudice would result to defendant if it retained the $318,000 rather than paying that sum over to Scientific Resources Corporation.

21. If defendant were permitted to make the payment of $318,000 to Scientific Resources Corporation, such action would prejudice the rights of the noteholders, including plaintiff and intervenor plaintiffs, and cause irreparable harm to the rights and interests of noteholders, including plaintiff and intervenor plaintiffs.

## CONCLUSIONS OF LAW

1. The court has jurisdiction by reason of diversity of citizenship of the parties and the amount in controversy exceeding $10,000, exclusive of interest and costs.

2. The rights of plaintiff and intervenor plaintiffs would be prejudiced, within the meaning of section 5(g) of the Stipulation dated September 30, 1970 between the parties hereto, if the defendant were permitted to make the payment referred to in the motion for preliminary injunction.

3. The rights of plaintiff and intervenor plaintiffs would be irreparably harmed if such payment were made by defendant.

## ORDER

And now, this 25th day of November, 1970, for the reasons specified in the foregoing Findings of Fact and Conclusions of Law it is ordered that defendant, Atlas Financial Corporation, its agents, servants and employees, is hereby enjoined from issuing any checks or making any payments to Scientific Resources Corporation under the terms of the tax sharing agreement dated September 15, 1965, as amended December 31, 1966, pending a final hearing on this matter.